IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIMBERLY BRUMFIELD,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ANDREW SAUL<br>Commissioner<br>of Social Security,<br><br>　　　　Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:  CIVIL ACTION No. 19-4555<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## MEMORANDUM OPINION

**RICHARD A. LLORET**　　　　　　　　　　　　　　　　　　　**August 21, 2020**
**U.S. MAGISTRATE JUDGE**

　　　Kimberly Brumfield was denied social security benefits by the decision of an Administrative Law Judge ("ALJ"). Ms. Brumfield contends that the ALJ's unfavorable decision was reached in error. *See* Pl. Br. at 4–10 (Doc. No. 12). Specifically, Ms. Brumfield argues that the ALJ erred by failing to account, at step four, for the impact of mild mental limitations, found at step two, on her ability to return to past relevant work. *Id.* The Commissioner of Social Security ("Commissioner") responds that the ALJ's decision was supported by substantial evidence. *See* Def. Br. at 5–8 (Doc. No. 15).

　　　After careful review, I agree with the Commissioner and find that the ALJ's decision is supported by substantial evidence; therefore, remand is not warranted and the final decision of the Commissioner is affirmed.

## PROCEDURAL HISTORY

Ms. Brumfield filed a claim for disability insurance benefits ("DIB") on November 3, 2016. R. 71. She alleged a disability onset date of November 5, 2015.[1] R. 33. Her application was initially denied on February 23, 2017. R. 78.

After this denial, Ms. Brumfield requested an administrative hearing before an ALJ on March 8, 2017. R. 90. The hearing was held on August 16, 2018. R. 30–44 (transcript of hearing). Ms. Brumfield and a vocational expert ("VE"), Donna Nealon, testified. *Id.* Following the hearing, on October 11, 2018, the ALJ issued a written decision, denying Ms. Brumfield's claim. R. 10–19. The Appeals Council subsequently denied Ms. Brumfield's request for review. R. 1–3. This appeal follows.

## FACTUAL BACKGROUND

### A. The claimant's background.

Ms. Brumfield was forty-nine years old on the date of the hearing. *See* R. 70. She completed the 12th grade. R. 34. Ms. Brumfield worked as a senior claims adjuster for sixteen consecutive years. R. 175. She stopped working after June 30, 2013, when she suffered a back injury after bending over to pick up some clothes. *See* R. 34–35, 190.[2] Ms. Brumfield alleges her back pain radiates down into her legs and causes reoccurring pain that prevents her from either sitting, walking, or standing for prolonged periods of time. R. 35.

---

[1] Ms. Brumfield amended her disability onset date from October 5, 2015, *see* R. 70, to November 5, 2015, at the hearing. R. 33.

[2] At the hearing, Ms. Brumfield testified that she has suffered from back issues since she was sixteen years old. However, this time when the back pain started, it did not go away. R. 34–35.

Ms. Brumfield applied for social security benefits on November 3, 2016, alleging disability because of high blood pressure, anxiety, degenerative disc disease, depression, bulging discs, carpal tunnel, and high cholesterol. R. 71.

### B. The ALJ's decision.

The ALJ issued an unfavorable decision on October 11, 2018, finding Ms. Brumfield not disabled as defined by the Social Security Act.[3] R. 10–19. In reaching this decision, the ALJ made the following findings of fact and conclusions of law pursuant to Social Security's five-step sequential evaluation.[4]

At step one, the ALJ concluded that Ms. Brumfield has not engaged in substantial gainful activity ("SGA") since her amended alleged onset date of November 5, 2015. R. 12.[5]

At step two, the ALJ determined that Ms. Brumfield had six severe impairments: degenerative disc disease, degenerative joint disease of knees, trochanteric bursitis, status post bilateral carpal tunnel release surgeries, fibromyalgia, and obesity. *Id.*

---

[3] Under the Social Security Act, in order to be found disabled, a claimant "must demonstrate some 'medically determinable basis for an impairment that prevents [her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period.'" *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)); *see also* 42 U.S.C. § 423(d)(1). Further, a person is considered disabled "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423 (d)(2)(A).

[4] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether a claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the residual functional capacity to perform the requirements of her past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration her residual functional capacity, age, education, and work experience. *See* 20 C.F.R. § 404.1520(a)(4)(i)–(v).

[5] The ALJ found Ms. Brumfield met the insured status requirements through December 31, 2018. R. 12.

The ALJ also found her gastroesophageal reflux disease, depression, and anxiety to be nonsevere. R. 12–13. The ALJ determined that Ms. Brumfield had "mild" mental limitations in all four functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. R. 13. Because Ms. Brumfield's medically determinable mental impairments caused no more than "mild" limitations in any of the functional areas, the ALJ concluded that they are nonsevere. R. 13.

At step three, the ALJ determined that Ms. Brumfield does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 13–14.

At step four, the ALJ assessed Ms. Brumfield's residual functional capacity ("RFC") or "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545. After a review of the objective and subjective medical evidence, the ALJ concluded that Ms. Brumfield could perform sedentary work with certain restrictions. R. 14–18. Specifically, the ALJ found that Ms. Brumfield could perform sedentary work with the exception that she can only occasionally climb, balance, stoop, kneel, crouch, and crawl.[6] She is also limited to no more than frequent handling and fingering. R. 14. In making this determination, the ALJ stated that she evaluated all of Ms. Brumfield's symptoms and "the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p." *Id.*

---

[6] As defined by the regulations, sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* Therefore, jobs are considered sedentary work "if walking and standing are required occasionally and other sedentary criteria are met." *Id.*

4

Based on Ms. Brumfield's RFC, the ALJ found that she is able to perform her past relevant work as a collection clerk. R. 18–19. Therefore, the ALJ ultimately found Ms. Brumfield to be "not disabled." R. 19.

## **DISCUSSION**

### A. The standard of review.

My review of the ALJ's decision is deferential; I am bound by her findings of fact to the extent those findings are supported by substantial evidence in the record. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing to *Plummer*, 186 F.3d at 427). Accordingly, my review of the ALJ's findings of fact is limited to determining whether substantial evidence supports the ALJ's decision. *Harftranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing to 42 U.S.C. § 405(g)). If the ALJ's decision is supported by substantial evidence, her disability determination must be upheld. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Evidence is substantial where it consists of "more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

I must rely on the record developed during the administrative proceedings along with the pleadings in making my determination. *See* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). I must also defer to the ALJ's evaluation of evidence, assessment of the witnesses, and reconciliation of conflicting expert opinions. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

The ALJ's legal conclusions and application of legal principles are subject to "plenary review." *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 759 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn an ALJ's decision based on an incorrect application of a legal standard even where I find that the decision is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (citing to *Friedberg v. Schweiker*, 721 F.2d 455, 447 (3d Cir. 1983)).

### B. The ALJ properly accounted for Ms. Brumfield's mild mental impairments in the RFC assessment and VE hypothetical.

Ms. Brumfield's sole issue on appeal is that the ALJ erred by failing to account for the impact of her mild mental limitations at step four, both in the RFC analysis and the hypothetical posed to the VE. Pl. Br. at 4–10. In response, the Commissioner asserts that the ALJ's RFC assessment and related hypothetical are supported by substantial evidence. Def. Br. at 6. After reviewing the ALJ's opinion and the administrative record, I agree with the Commissioner.

The ALJ first considered Ms. Brumfield's mental impairments at step two of the sequential analysis. R. 13. Assessing the severity of Ms. Brumfield's depression and anxiety, the ALJ evaluated the four broad areas of mental functioning (known as the "Paragraph B" criteria) set out in the relevant disability regulations, finding that she had a mild limitation in all four areas. *Id.* With respect to the first functional area (understanding, remembering, or applying information), the ALJ recognized that Ms. Brumfield had alleged that "she will occasionally forget to take her medication" and will need "to write down instructions if they are longer than one or two steps." *Id.* With

6

respect to the second functional area (interacting with others), the ALJ noted that Ms. Brumfield is still able to go to the gym for aqua therapy and grocery shopping. *Id.* With respect to the third functional area (concentrating, persisting, or maintaining pace), the ALJ acknowledged that Ms. Brumfield had "testified to difficulty in concentrating, alleging that she will have to return to something three to four times if it requires a lot of detail." *Id.* Finally, with respect to the fourth functional area (adapting or managing oneself), the ALJ reasoned that "[a]lthough [Ms. Brumfield] testified to crying a lot and experiencing suicidal ideation, this did not prompt her to seek emergency treatment." *Id.* The ALJ further noted that in Ms. Brumfield's recent therapy sessions, she has "presented in a relaxed and calm mood." *Id.*

Although this analysis was completed at step two, the ALJ explained its impact on her step four RFC determination:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

R. 13. The ALJ did not further discuss Ms. Brumfield's nonsevere mental impairments or include related limitations in the RFC. *See* R. 13–17. The only exception was when the ALJ decided, at step four, to give great weight to state-agency reviewer's opinion that Ms. Brumfield only had mild limitations in each functional area. R. 17. Ms. Brumfield

7

now challenges the ALJ's failure to specifically account for these mild limitations in the RFC and the hypothetical posed to the VE. Pl. Br. at 4–10.

The Third Circuit recently clarified the interplay between the earlier Paragraph B analysis (done at steps two or three) with the later RFC analysis (done at step four). "[N]o incantations are required at steps four and five simply because a particular finding has been made at steps two and three." *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019). Rather, "[t]hose portions of the disability analysis serve distinct purposes and may be expressed in different ways." *Id.* The Paragraph B categories are used at steps two and three "to rate the severity of mental impairment(s)." *Id.* (quoting SSR 96-8P, 1996 WL 374184, at *4 (July 2, 1996)). In contrast, the step four RFC assessment determines "the most [a claimant] can still do despite [her] limitations.'" *Id.* (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); SSR 96-8P, at *2). While these analyses are "obviously related," the RFC determination, unlike the earlier severity determinations, "requires a more detailed assessment [of the areas of functional limitation] by itemizing various functions contained in the broad [Paragraph B] categories[.]'" *Id.* (quoting SSR 96-8P, at *4). Another difference is that the RFC "'must be expressed in terms of work-related functions[,]' such as by describing the claimant's 'abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.'" *Id.* (quoting SSR 96-8P at *6). The practical result of these differences is that "the findings at steps two and three will not necessarily translate to the language used at steps four and five." *See id.*

Despite these differences, the step two and three findings are "plainly relevant" to the ALJ's later step four analysis because it involves "the claimant's actual

8

impairments." *Id.* The social security regulations require ALJs, at step four, to provide "a narrative discussion describing how the evidence supports each' limitation" contained in the RFC. *Id.* (quoting SSR 96-8P at *7). This narrative must "reflect the claimant's particular impairments, including those embodied in the functional limitation findings" from earlier steps. *Id.* The ALJ "must consider limitations and restrictions imposed by all of an individual's impairments," even those found to be nonsevere at step two. *See id.* (quoting SSR 96-8P at *5).

According to the Third Circuit, prior precedent bolsters "the conclusion that the findings at steps two and three are important to the ALJ's statement of a claimant's limitation but do not require the use of any particular language." *Id.* The court pointed to the following passage from the *Ramirez* decision:

> We cannot concur in the Commissioner's [position that the functional limitation findings are relevant only at steps two and three of the disability analysis]. While [the pertinent regulation] does state that the [functional limitation] findings are "not an RFC assessment" and that step four requires a "more detailed assessment," it does not follow that the [functional limitation findings] play no role in steps four and five[.]

*Id.* at 209–210 (alterations in original) (quoting *Ramirez v. Barnhart*, 372 F.3d 546, 555 (3d Cir. 2004)). However, the step two and step three "findings need only be 'adequately conveyed' in the ALJ's statement of the limitation, not recited verbatim." *Id.* This means that the step two and three findings "do not dictate the terms of the ALJ's statement of the claimant's limitation in the final analytical steps." *Id.* But those findings are nevertheless "relevant to that statement of the limitation, which must be sufficient to reflect all of a claimant's impairments." *Id.*

9

For example, in *Hess*, the ALJ determined, at step three, that the claimant's severe mental health impairments caused moderate difficulties in "concentration, persistence, and pace." *See id.* at 203–04. Despite this finding, the ALJ concluded that the claimant could still perform "simple tasks" and included this limitation in the RFC at step four. *Id.* at 204. The Third Circuit approved of the ALJ's RFC analysis, finding that the ALJ provided a "valid explanation" for the "simple tasks" limitation in light of the Paragraph B finding of moderate difficulties in concentration, persistence, and pace. *Id.* at 212–14 ("*Ramirez*'s 'valid explanation' rule remains the law in our circuit."). The court pointed to the ALJ's examination of the record combined with the ALJ's explanation that the claimant's daily activities were consistent with the ability to do simple tasks.[7] *Id.* at 213–14.

Having reviewed both the ALJ's decision and the administrative record, I am satisfied with the ALJ's overall treatment of Ms. Brumfield's mental impairments. It is clear that the ALJ considered all of the evidence of Ms. Brumfield's mental health impairments and understood their impact before determining Ms. Brumfield's RFC. *See* R. 13–14.[8] The ALJ also adequately conveyed the decision to not include any mental limitations in Ms. Brumfield's RFC and the related hypothetical. In evaluating the Paragraph B criteria at step two, the ALJ credited some of Ms. Brumfield's testimony to

---

[7] In her brief, Ms. Brumfield relies on a line of nonbinding pre-*Hess* case law. Pl. Br. at 6–8 (citing to, for example, *Balla v. Comm'r of Soc. Sec.*, No. 18-386, 2019 WL 2482661 (D.N.J. June 14, 2019)). For the reasons discussed throughout this memorandum opinion, I do not find those cases persuasive here.

[8] *See also Holley v. Comm'r Soc. Sec.,* 590 F. App'x 167, 168 (3d Cir. 2014) (not precedential) ("While Holley focused upon the ALJ's broad finding of moderate difficulties at step two of the sequential evaluation, we give more attention to the substance of his overall review. We want to know how well the ALJ studied the record, and how thoroughly he understood Holley's specific impairments (or lack thereof) before making his decisions about her residual functional capacity, and ultimately, her disability claim. After reviewing everything, we conclude that the ALJ had a sound knowledge of the record. His analysis of the evidence easily met our standards and expectations").

the extent she demonstrated mild limitations. *See* R. 13 (describing testimony relating to difficulty concentrating and remembering instructions, crying, and suicidal ideations). But overall, the ALJ found Ms. Brumfield's limitations to be, at most, mild, noting that Ms. Brumfield is still able to go grocery shopping and to the gym, has not sought emergency treatment, and has presented in "a relaxed and calm mood" at her recent therapy sessions." *See id.*

After concluding that Ms. Brumfield's depression and anxiety were nonsevere impairments, the ALJ addressed the relationship between her severity analysis and the forthcoming RFC analysis. R. 13. The ALJ emphasized that while the analyses differed, the RFC assessment completed at step four ultimately "reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." *Id.* That RFC assessment understandably contained no work-related limitations based on Ms. Brumfield's nonsevere mental health impairments. *See* R. 14. Such a finding is consistent with the substance of the analysis done at step two.[9] *Cf. Holley v. Comm'r Soc. Sec.,* 590 F. App'x 167, 169 (3d Cir. 2014) (not precedential) (because the evidence the claimant produced on mental impairments was very thin, she provided "no compelling reason why these should have been spelled out in detail in the hypothetical").

---

[9] To be precise, Ms. Brumfield challenges both the ALJ's RFC determination and the hypothetical posed to the VE. Pl. Br. at 4–10. A hypothetical question to a vocational expert "must reflect *all* of the claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) (emphasis added) (citing to *Podedworny v. Harris*, 745 F.2d 210 (3d Cir. 1984); *Wallace v. Sec'y*, 722 F.2d 1150 (3d Cir. 1983)). "The Third Circuit has explained that 'objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself.'" *Durden v. Colvin*, 191 F. Supp. 3d 429, 460 (M.D. Pa. 2016) (quoting *Rutherford*, 399 F.3d at 554 n.8). This appears to be the case here: Ms. Brumfield takes issue with ALJ's hypothetical because it was based on an incomplete RFC assessment. Pl. Br. at 10. "Where a plaintiff contends that the VE 'testimony cannot be relied upon because the ALJ failed to recognize credible established limitations during the RFC assessment and so did not convey those limitations to the vocational expert', such are challenges to the RFC assessment itself." *Id.* (citing *Rutherford*, 399 F.3d 546 at n.8). For the reasons discussed above, I find that substantial evidence supports the ALJ's RFC assessment and therefore the related hypothetical was proper.

Nevertheless, even if the ALJ's consideration of the mild Paragraph B findings at step four was incomplete, any error was harmless. *See, e.g.*, *Rutherford*, 399 F.3d at 553 (remand is not required when it would not affect the outcome of the case); *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003) (not precedential) (the failure to make a finding as to what effect plaintiff's depression would have in combination with his asthma on his ability to perform substantial gainful employment was at worst a harmless error).

Evidence pertaining to Ms. Brumfield's depression and anxiety in the record is sparse. *See* R. 567–90 (less than thirty pages of mental health records). The earliest progress note from Ms. Brumfield's mental health providers is dated October 22, 2016. Her psychiatrist noted that Ms. Brumfield's was cooperative, in a good mood, and had goal-oriented thought processes, fair insight and judgment, and no suicidal or homicidal ideations. R. 589–90. The next time she saw her psychiatrist was not until January, and then March, 2017,[10] when Ms. Brumfield's provider observed that she was cooperative and in an okay mood. R. 588 (note dated January 21, 2017), 587 (note dated March 29, 2017). Later that year, Ms. Brumfield's psychiatric medication notes indicated that her appearance was appropriate, behavior was cooperative, speech was intact, mood was euthymic, affect was appropriate, thought process was intact, and she had no suicidal or homicidal ideations. R. 583 (noted dated September 6, 2017), 582 (note dated October 11, 2017), 581 (note dated December 11, 2017). Notably, her psychiatrist found her to be stable and without problems. *Id.*

---

[10] These progress notes, along with the note from October 2016, are handwritten and difficult to read. *See* 587–90.

12

Starting in late February 2018, it appears that Ms. Brumfield began regularly attending therapy sessions twice a month. *See* R. 567–68, 573–75, 577, 579–80. During her first session, an intake assessment was completed. R. 580. Ms. Brumfield reported that she has had symptoms of depression and anxiety since she was sixteen years old, and she has received psychiatric treatment services in the past. *Id.* She informed her therapist that while she had a suicidal ideation when she was sixteen, she "denied any recent or present suicidal/homicidal ideations." *Id.* Her therapist noted that she was "oriented, calm, relaxed and cooperative." *Id.*

Two weeks later, Ms. Brumfield saw her therapist again. R. 579. She was in a "slight[ly] frustrated, sad and stressed mood" and appeared "overwhelmed." *Id.* But her therapist noted that her "functionality level was within moderate range." *Id.* Later that day, her psychiatrist noted that she was "stable" and cooperative. R. 578. Her mental status exam revealed that she had appropriate appearance, cooperative behavior, intact speech, euthymic mood, appropriate affect, intact thought process, appropriate thought content, intact sensorium, no hallucinations, and no suicidal or homicidal ideation or plans. *Id.* By the end of the month, Ms. Brumfield told her therapist that she "still worries a lot" but that her medications were "helping with her depression because she no longer feels so depress[ed]." R. 577. Her therapist also observed that she presented herself in a "positive manner" without exhibiting "any signs of sadness or frustration." *Id.* A little over a week later, Ms. Brumfield's psychiatrist noted that her signs and symptoms were "under control."[11] R. 576.

---

[11] As at her previous medication check, Ms. Brumfield had appropriate appearance, cooperative behavior, intact speech, euthymic mood, appropriate affect, intact thought process, appropriate thought content, intact sensorium, no hallucinations, and no suicidal or homicidal ideation or plans. R. 576.

13

By early April, about a month after she started therapy, Ms. Brumfield informed her therapist that she felt that "her condition is getting better in a gradual process each day." R. 575. Her therapist documented that Ms. Brumfield again presented herself in a positive manner and had no suicidal or homicidal ideations. *Id.* At her next appointment, Ms. Brumfield reported feeling "much better mentally" despite an increase in her physical pain. R. 574. As noted in other progress notes, Ms. Brumfield had no suicidal or homicidal ideations. *Id.*

Continuing in her progress, on May 9, 2018, Ms. Brumfield "felt much better overall." R. 573. Her therapist observed an increase in self-confidence, "evidenced by her steady eye contact, boldness in verbal expression and good self-control." *Id.* She also had no suicidal or homicidal intent. *Id.* That same day, she underwent a psychiatric evaluation. R. 569–72. The mental status exam revealed that Ms. Brumfield's attitude, behavior, attention, and concentration were all within normal limits; her prevailing mood was labile; her thought process was non-psychotic; her speech was goal directed; and her insight and judgment were limited. R. 571. She was diagnosed with severe major depression, and her psychiatrist recommended that she continue to take her medications and see her therapist regularly. R. 572. Later that month, Ms. Brumfield presented at her therapy session in a "more happy and relaxed mood," reporting "some positive change in her status despite her pain." R. 568. As at her other sessions, she had no intent of suicide or homicide. *Id.* Finally, at the last therapy session in the record, Ms. Brumfield's therapist noted that she had no intent of suicide or homicide, was in a "relaxed and calm mood," and was "insightful of the presenting problems." R. 567.

Based on this limited record, there is little evidence to support the claim that Ms. Brumfield's mental impairments, when considered alone or in combination with her

14

other impairments, would result in work-related limitations. While Ms. Brumfield suffers from depression and anxiety, her mental health treatment and clinical findings, during the relevant period, have been overwhelmingly normal. Ms. Brumfield has not presented evidence demonstrating that her mental limitations cause work-related limitations.[12] Accordingly, any error by the ALJ was harmless.

## CONCLUSION

Based upon the above, Ms. Brumfield's request to remand is denied. The ALJ properly accounted for Ms. Brumfield's mild mental limitations in her RFC assessment, and therefore the ALJ's hypothetical to the vocational expert was sufficient.

BY THE COURT:

*s/Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. Magistrate Judge**

---

[12] The ALJ questioned the VE about the impact of an added limitation of routine, repetitive tasks. R. 42. The VE testified that while such a limitation would preclude Ms. Brumfield performing her past relevant work, there remained jobs in the national economy that she could perform. R. 42–43.